## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| OCEANA, INC. | ) | |
| 1350 Connecticut Avenue NW, Fifth Floor | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| PENNY PRITZKER, in her official capacity as | ) | |
| Secretary of the Department of Commerce, | ) | |
| Department of Commerce | ) | |
| 1401 Constitution Ave., NW | ) | |
| Washington, DC  20230 | ) | |
| | ) | |
| NATIONAL OCEANIC AND ATMOSPHERIC | ) | |
|    ADMINISTRATION | ) | |
| United States Department of Commerce | ) | |
| Room 5128 | ) | |
| 1401 Constitution Avenue, NW | ) | |
| Washington, DC  20230 | ) | |
| | ) | |
| NATIONAL MARINE FISHERIES SERVICE, | ) | |
| Department of Commerce, Room 14555 | ) | |
| 1315 East-West Highway | ) | |
| Silver Spring, MD  20910 | ) | |
| | ) | |
| *Defendants.* | ) | |

_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiff Oceana, Inc. ("Oceana") on behalf of its adversely affected members

hereby challenges the failure by the National Marine Fisheries Service ("Fisheries Service" or

"Defendants") to take timely action to limit the number of dusky sharks killed by fishing activity

each year, end overfishing, and rebuild the northwest Atlantic dusky shark population to a

sustainable level, as it is required to do under the Magnuson-Stevens Fishery Conservation and

Management Act ("Magnuson-Stevens Act").  The Fisheries Service's failure to fulfill its non-discretionary management obligations within the time periods specified by the Magnuson-Stevens Act has resulted in unlawfully withheld or unreasonably delayed agency actions, as defined by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), in violation of the APA and the Magnuson-Stevens Act.

2.      The dusky shark, a highly migratory apex predator that has experienced dramatic declines in the population's abundance due to fishing pressure, has been identified as an "overfished" fish stock since 2006.  The shark has remained overfished and at very low abundance because, while fishermen have been prohibited from retaining dusky sharks since 2000, thousands per year are still caught incidentally by commercial and recreational fisheries, and many of these sharks die.

3.      The Fisheries Service has failed to take timely, required actions that would help the dusky shark population recover.  Namely, the Fisheries Service has failed to establish annual catch limits and accountability measures to limit dusky shark mortality (which it was required to establish by 2010); has failed for the better part of a decade to implement measures necessary to end overfishing "immediately;" and has failed since at least 2011 to make timely revisions to its management measures when it became clear that existing measures were not fostering adequate progress toward rebuilding the dusky shark population.  Each of these failures violates the requirements of the Magnuson-Stevens Act and the APA.

4.      These failures to act within the time frames required by the Magnuson-Stevens Act harm Oceana's interests in a healthy population of dusky sharks and in protecting and restoring the species' role as a top predator in maintaining a balanced, healthy ecosystem.  This harm will continue in the absence of action by this Court.

## PARTIES

5.      Plaintiff Oceana, Inc. is a non-profit, international conservation organization dedicated to maintaining and protecting the world's oceans, including the northwest Atlantic. Oceana's mission includes making oceans vibrant and healthy by obtaining protection and conservation for Atlantic marine ecosystems and wildlife, like sharks.  Oceana has over 310,000 members worldwide, including over 115,000 members in the coastal states from Massachusetts to Texas.  The Fisheries Service appointed marine scientists from Oceana to serve on the Highly Migratory Species Fishery Management Plan Advisory Panel for numerous years, including most recently from 2009 through 2011 and from 2014 on.   Oceana's efforts concerning dusky sharks include numerous public comments regarding the species to the Fisheries Service.  Oceana has been involved in public awareness events concerning dusky sharks and alerts its membership on issues involving the protection of dusky sharks.  Oceana's headquarters are located in Washington, D.C.  It has worldwide offices or staff in Madrid, Spain; Brussels, Belgium; Copenhagen, Denmark; Geneva, Switzerland; Belmopan, Belize; Santiago, Chile; Manila, Philippines; Brasilia, Brazil; Toronto, Canada; and offices in the United States in Alaska, California, Oregon, Massachusetts, Florida, New York, North Carolina, South Carolina, Virginia, and Louisiana in addition to the District of Columbia.

6.      Oceana's members observe and interact with dusky sharks and their habitat in the northwest Atlantic for recreational, aesthetic, and commercial purposes, including scuba diving, wildlife watching, and studying dusky sharks.  These activities require the dusky sharks to maintain a viable population in the northwest Atlantic that contributes to a healthy, functioning ecosystem.  Consequently, Oceana's members are concerned and directly affected by the overfishing of dusky sharks.

3

7.      Oceana's members suffer direct and immediate injury caused by the Fisheries Service's failure to take timely action to end overfishing and rebuild the dusky shark population. Oceana's members plan to continue their observations and interactions with the dusky sharks and their habitat in the future, but their activities are impaired by the Fisheries Service's inaction in limiting the number of dusky sharks killed each year.  Unless the Court grants the relief requested, the Fisheries Service's failure to fulfill its obligations will continue to harm Oceana's members.  The Fisheries Service's failures to act are unlawful, in violation of the Magnuson-Stevens Act and the APA, 5 U.S.C. §§ 701-706, and are causing irreparable injury to Oceana for which it has no other adequate remedy at law.

8.      Defendant Penny Pritzker is Secretary of the United States Department of Commerce ("Secretary").  She is sued in her official capacity as the chief officer of the Department charged with overseeing the proper administration and implementation of the Magnuson-Stevens Act, including provisions of that Act that require implementation of annual catch limits, accountability measures, and others actions necessary to end overfishing and rebuild overfished populations of fish.

9.      Defendant National Oceanic and Atmospheric Administration ("NOAA") is an agency of the United States Department of Commerce with supervisory responsibility for the Fisheries Service.  The Secretary of the Department of Commerce has delegated responsibility to implement and enforce compliance with the Magnuson-Stevens Act to NOAA, which in turn has sub-delegated that responsibility to the Fisheries Service.

10.     Defendant National Marine Fisheries Service is an agency of the United States Department of Commerce that has been delegated the responsibility to implement and enforce fishery management plans and amendments to those plans, and to issue implementing

regulations.  The Fisheries Service is the United States government agency with primary

responsibility to ensure that the requirements of the Magnuson-Stevens Act are followed and

enforced, including the requirements to implement annual catch limits, accountability measures,

and others actions necessary to end overfishing and rebuild overfished populations of fish.

## JURISDICTION AND VENUE

11.     This action arises under the Magnuson-Stevens Act, 16 U.S.C. §§ 1801-1891d

and the APA, 5 U.S.C. §§ 701-706.

12.     This Court has jurisdiction over this action pursuant to the Magnuson-Stevens

Act, which provides that "[t]he district courts of the United States shall have exclusive

jurisdiction over any case or controversy arising under" the Magnuson-Stevens Act. 16 U.S.C. §

1861(d).  This Court further has jurisdiction over this action pursuant to the APA, which allows

the Court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. §

706(1).  The Fisheries Service has unlawfully failed to take three specific, non-discretionary

actions under the Magnuson-Stevens Act: (1) establish an annual catch limit and accountability

measures by 2010 for a fish stock determined to be subject to overfishing, Pub. L. No. 109-479,

§§ 104(a)(10), (b)(1)(A), 120 Stat. 3575, 3584 (Jan. 12, 2007), 16 U.S.C. § 1853 note; (2) end

overfishing of an overfished stock within two years of determining that stock is overfished, 16

U.S.C. § 1854(e)(3)(A); and (3) take immediate action to revise a fishery management plan,

amendment, or regulations if they have not resulted in adequate progress towards ending

overfishing of an overfished stock, 16 U.S.C. § 1854(e)(7)(A).

13.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331

(federal question jurisdiction), which grants the district courts "original jurisdiction of all civil

actions arising under the . . .  laws . . .  of the United States" and 28 U.S.C. § 1361, which grants

the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

14.     This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and may grant relief pursuant to the Magnuson-Stevens Act, 16 U.S.C. § 1861(d), as well as the APA, 5 U.S.C. § 706.

15.     Venue is properly vested in this judicial district under 28 U.S.C. § 1391(b), (e), where the Defendants are officers or employees of the United States and reside in this district, and a substantial part of the events and omissions which gave rise to this action occurred in this district.

## LEGAL BACKGROUND: MAGNUSON-STEVENS ACT

### Definitions and General Requirement to End Overfishing

16.     The Magnuson-Stevens Act is designed to conserve and manage fish populations in the United States territorial waters and in the exclusive economic zone, which extends from the boundaries of state waters to 200 miles offshore or to an international boundary with neighboring countries.  16 U.S.C. § 1801(b)(1).  The Magnuson-Stevens Act gives the Secretary, acting through the Fisheries Service, authority over fisheries for Atlantic highly migratory species, 16 U.S.C. § 1852(a)(3), and requires the Fisheries Service to prepare and implement fishery management plans for all Atlantic highly migratory fisheries under its authority, 16 U.S.C. § 1854(g)(1).

17.     The Fisheries Service has the responsibility to carry out any fishery management plan or amendment approved or prepared by the Secretary in accordance with the Magnuson-Stevens Act.  16 U.S.C. § 1855(d).  The Fisheries Service also may promulgate such regulations,

pursuant to APA rulemaking procedures, as may be necessary to carry out this responsibility or

to carry out any other provisions of the Magnuson-Stevens Act.  16 U.S.C. § 1855(d).

18.     When a stock of fish is caught in more than one fishery, Fisheries Service

guidelines state that the conservation and management measures for that stock should be

included in a single "primary" fishery management plan.  50 C.F.R. § 600.310(d)(7).  *See also* 16

U.S.C. § 1851(a)(3) ("To the extent practicable, an individual stock of fish shall be managed as a

unit throughout its range.").

19.     According to the Magnuson-Stevens Act, fishery management plans are to

"contain the conservation and management measures . . . necessary . . . to prevent overfishing

and rebuild overfished stocks, and to protect, restore, and promote the long-term health and

stability of the fishery." 16 U.S.C. § 1853(a)(1)(A).

20.     The Magnuson-Stevens Act defines the terms "overfishing" and "overfished" to

mean "a rate or level of fishing mortality that jeopardizes the capacity of a fishery to produce the

maximum sustainable yield on a continuing basis."  16 U.S.C. § 1802(34).

21.     The Magnuson-Stevens Act defines "fishery" to mean "one or more stocks of fish

. . . and any fishing for such stocks."  16 U.S.C. § 1802(13).  A "stock of fish" is defined as "a

species, subspecies, geographical grouping, or other category of fish capable of management as a

unit."  16 U.S.C. § 1802(42).  "Fishing" includes "the catching, taking, or harvesting of fish;"

"the attempted catching, taking, or harvesting of fish;" and "any other activity which can

reasonably be expected to result in the catching, taking, or harvesting of fish."  16 U.S.C. §

1802(16).

22.     The Magnuson-Stevens Act requires the Fisheries Service to report annually to

the Congress on the status of fish stocks.  In these reports, the Fisheries Service must identify

fish stocks that are overfished as well fish stocks that are subject to overfishing.  16 U.S.C. §

1854(e)(1); 50 C.F.R. § 600.310(j)(1).

23.     The Magnuson-Stevens Act requires that fishery management plans, fishery

management plan amendments, and any regulations promulgated to implement such fishery

management plans must be consistent with the "National Standards" for fishery conservation and

management. 16 U.S.C. § 1851(a).  Preeminent among these standards is National Standard 1 of

the Magnuson-Stevens Act, which requires that "[c]onservation and management measures shall

prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery.

. . ." 16 U.S.C. § 1851(a)(1).

24.     Pursuant to the Magnuson-Stevens Act, 16 U.S.C. § 1851(b), the Fisheries

Service promulgates guidelines for implementing the ten national standards for fishery

conservation and management measures.  The guidelines reflect the Fisheries Service's

interpretation of the national standards.  50 C.F.R. § 600.305(a)(3).

**Requirement to Establish Annual Catch Limits and Accountability Measures**

25.     In 2006, Congress amended the Magnuson-Stevens Act to require the Fisheries

Service to specify in its fishery management plans annual catch limits that prevent overfishing of

stocks and measures to ensure accountability with respect to those catch limits.  Pub. L. No. 109-

479, § 104(a)(10), 120 Stat. 3575, 3584 (Jan. 12, 2007) (Magnuson-Stevens Fishery

Conservation and Management Reauthorization Act of 2006 ("Magnuson-Stevens

Reauthorization Act")), 16 U.S.C. § 1853(a)(15).

26.     The Magnuson-Stevens Reauthorization Act required the Fisheries Service to

implement those annual catch limits and accountability measures "in fishing year 2010 for

fisheries determined by the [Fisheries Service] to be subject to overfishing." Pub. L. No. 109-479, § 104(b)(1)(A), 120 Stat. 3575, 3584, 16 U.S.C. § 1853 note.

27.     The National Standard 1 Guidelines define "annual catch limit" as the "level of annual catch of a stock or stock complex that serves as the basis for invoking [accountability measures]." 50 C.F.R. § 600.310(f)(2)(iv). "Catch" is defined as "the total quantity of fish . . . taken in commercial, recreational, subsistence, tribal, and other fisheries," including "mortality of fish that are discarded." 50 C.F.R. § 600.310(f)(2)(i).

28.     Under the National Standard 1 Guidelines, accountability measures are defined as management controls to prevent annual catch limits from being exceeded and should correct any overage that does occur "in as short a time as possible." 50 C.F.R. § 600.310(g)(1). If an annual catch limit is exceeded in any given year, accountability measures "must be triggered and implemented as soon as possible . . ." 50 C.F.R. § 600.310(g)(3).

29.     These two requirements work together to ensure that "[annual catch limits] in coordination with [accountability measures] must prevent overfishing." 50 C.F.R. § 600.310(f)(5)(i). "The system of [annual catch limits] and [accountability measures] designed must be effective in protecting the stock or stock complex as a whole." 50 C.F.R. § 600.310(f)(5)(ii).

**Requirement to Immediately End Overfishing and Rebuild Overfished Stocks**

30.     The Magnuson-Stevens Act requires that, within two years of identifying a stock's overfished condition, the Fisheries Service must implement a fishery management plan, fishery management plan amendment, or regulations to end overfishing "immediately" and rebuild the stock. 16 U.S.C. § 1854(e)(3)(A). This plan, amendment, or regulation (often called a "rebuilding plan") must specify a time for rebuilding the stock that must be "as short as

possible," taking into account, among other things, the status and biology of the overfished species.  16 U.S.C. § 1854(e)(4)(A)(i).  The Act requires that the rebuilding period may not exceed 10 years, unless the biology of the stock, other environmental conditions, or management measures under an international agreement dictate otherwise.  16 U.S.C. § 1854(e)(4)(A)(ii).

31.     The Magnuson-Stevens Act requires the Fisheries Service to review rebuilding plans at least every two years to determine whether they have resulted in adequate progress toward ending overfishing and rebuilding the stock.  16 U.S.C. § 1854(e)(7).  In the case of Atlantic highly migratory species such as the dusky shark, if the Fisheries Service determines that adequate progress has not been made, the Fisheries Service must "immediately make revisions necessary to achieve adequate progress."  16 U.S.C. § 1854(e)(7)(A).

## FACTUAL BACKGROUND

32.     The dusky shark (*Carcharhinus obscurus*) is a large, highly migratory shark averaging about twelve feet long that inhabits warm temperate and tropical ocean waters around the globe.  The northwest Atlantic population of dusky sharks occurs from southern Massachusetts to Florida, the Bahamas, Cuba, and the northern Gulf of Mexico.  These sharks live in both inshore and offshore ocean waters, ranging from shallow water of about 30 feet or less to as deep as 1,300 feet.  They undertake lengthy migrations up and down the coast in summer and fall.

33.     Dusky sharks reach sexual maturity at about 20 years of age.  The life span of a dusky shark is at least 40 years.  Mature females reproduce every two to three years, accommodating a nearly two-year gestation period and a one-year period of rest in between pregnancies.  They give birth to between two and fourteen live pups.

34.     The dusky shark's slow growth, late maturity, and relatively infrequent reproduction render it highly vulnerable to overfishing.

35.     Dusky sharks became a popular target for commercial and recreational fishing off the U.S. Atlantic and Gulf coasts in the late 1970s, in part because dusky sharks are one of the most highly desired species in the international shark fin trade.  As a result, the population experienced a steep decline over the next two decades, leading the Fisheries Service to identify dusky sharks as a "Species of Concern" in 1997.

36.     The Fisheries Service manages the dusky shark fishery under its Highly Migratory Species Fishery Management Plan.

37.     A primary objective of the Highly Migratory Species Fishery Management Plan is to "[r]ebuild overfished Atlantic [highly migratory species] stocks, and monitor and control all components of fishing mortality, both directed and incidental, so as to ensure the long-term sustainability of the stocks."  Fisheries Service, Consolidated Highly Migratory Species Fishery Management Plan (July 2006) at 1-13, Table 1.3.

38.     In 2000, the Fisheries Service prohibited commercial and recreational fishermen from retaining dusky sharks, meaning that fishermen are not allowed to keep any dusky sharks that they catch.

39.     Prohibiting the retention of dusky sharks does not prevent dusky sharks from being caught and killed, however.  Dusky sharks are frequently hooked by bottom longline gear used to target other shark species, reef fish, snappers, and groupers, as well as pelagic longline gear used to target tuna and swordfish.  Dusky sharks often do not survive being hooked and hauled up, even if they are released.  Scientists have estimated that more than 80 percent of immature dusky sharks and more than 40 percent of adults caught on bottom longlines die by the

time they are hauled to the fishing vessel.  More than a third of dusky sharks caught on pelagic

longlines die by the time they are brought to the vessel.

40.     The Fisheries Service completed its first formal stock assessment of dusky sharks

in 2006, concluding that the stock was overfished and subject to overfishing.  In 2008, the

Fisheries Service implemented Amendment 2 to the Highly Migratory Species Fishery

Management Plan, part of which was designed to rebuild the population of dusky sharks in

response to the 2006 stock assessment.  Amendment 2 established a target date of 2108 for

rebuilding the dusky shark population to a sustainable level.

41.     Amendment 2 established limits on targeted fishing for other shark species, which

the Fisheries Service theorized would lead to less bycatch of dusky sharks.  It did not establish a

limit on the number of dusky sharks that could be caught or killed every year as bycatch.

42.     Since the implementation of Amendment 2, substantial bycatch of dusky sharks

has continued to occur in both commercial and recreational fisheries.  In commercial fisheries,

dusky sharks are primarily caught by bottom longlines and pelagic longlines, but are also caught

in gillnets and other net gear.

43.     By the Fisheries Service's estimate, bottom longline, handline, and troll fisheries

in the U.S. Southeast region, alone, took as bycatch an average of at least 4,033 dusky sharks per

year between 2006 and 2010. This estimate excludes bycatch from pelagic longline fisheries and

recreational fisheries, but includes an estimated bycatch of 161 dusky sharks in the shark bottom

longline fishery and a combined estimate of 3,872 dusky sharks caught in the Gulf of Mexico

reef fish bottom longline, Gulf of Mexico reef fish vertical line, southeastern Atlantic coastal

migratory pelagic troll, southeastern Atlantic snapper-grouper bottom longline, and the

southeastern Atlantic snapper-grouper vertical line fisheries.  Additionally, the incomplete

estimates that are available are highly uncertain; at the 95% confidence interval the average annual bycatch estimate ranges up to 10,000.

44.     The number of dusky sharks caught in the shark bottom longline fishery in 2014 was higher than the annual average estimated for the 2006 to 2010 period.  The Fisheries Service's most recent bycatch estimate shows that the shark bottom longline fishery caught 250 dusky sharks in 2014.

45.     From 2000-2009, the pelagic longline fishery caught an average of 21,391 pounds of dusky sharks per year.  The Fisheries Service has not published recent estimates for bycatch of dusky sharks in the pelagic longline fishery.  The agency's most recent bycatch report states that in 2010 the southeast pelagic longline fishery caught 32,216 pounds of large coastal sharks, including dusky sharks.

46.     Even though retention of dusky sharks in the recreational fishery has been prohibited since 2000, recreational fisheries caught an average of 1,899 dusky sharks per year between 2000 and 2009.

47.     Mexican fisheries, both legal and illegal, also affect the northwest Atlantic stock of dusky sharks.  These fisheries have historically caught thousands of dusky sharks in the Gulf of Mexico.

48.     In 2011, the Fisheries Service completed another stock assessment of dusky sharks and again concluded that the dusky shark was overfished and subject to overfishing.  That assessment also concluded that the likelihood of achieving the Fisheries Service's target rebuilding date of 2108 with current levels of fishing mortality on dusky sharks was low.  The Fisheries Service's analysis showed that fishing mortality would need to be cut by more than half in order to achieve a 70 percent likelihood of rebuilding the dusky shark population by 2108.

49.     In 2012, the Fisheries Service proposed Amendment 5 to the Highly Migratory Species Fishery Management Plan, which included management measures for multiple shark species, including the dusky shark.  After receiving public comments opposed to management measures for dusky sharks, the Fisheries Service adopted an amendment (Amendment 5a) on July 3, 2014, that omitted any new management measures for dusky sharks.  In March 2014, the Fisheries Service published a notice for public comment on a "pre-draft" amendment (Amendment 5b) that was supposed to address dusky shark management.  The Fisheries Service has taken no further formal action to advance Amendment 5b or any other fishery management plan amendment since 2014 to address requirements to establish annual catch limits and accountability measures, end overfishing, and rebuild dusky sharks.

50.     The dusky shark population in the northwestern Atlantic and Gulf of Mexico has declined by an estimated 80 to 85 percent since the mid-1970s, with much of that decline occurring between the late 1980s and 2009.  In a recent report, the Fisheries Service noted signs of a mild increase in dusky shark abundance in recent years but a continued decrease in dusky shark biomass.  The agency attributed this apparent contradiction to the decreasing number of older, larger sharks while the number of younger, smaller sharks appears to have increased.  The same report noted that there is substantial uncertainty in abundance estimates and projections, that the population remains highly vulnerable to overfishing, and that the problem could get worse if longline fishing effort were to increase.

///

///

///

///

## CAUSES OF ACTION

## COUNT I: THE FISHERIES SERVICE FAILED TO ESTABLISH ANNUAL CATCH LIMITS OR ACCOUNTABILITY MEASURES FOR DUSKY SHARKS IN VIOLATION OF THE MAGNUSON-STEVENS ACT

51.     Oceana realleges and incorporates by reference paragraphs 1 through 50 of the Complaint in this First Cause of Action.

52.     The Fisheries Service manages the catch of dusky sharks through the Highly Migratory Species Fishery Management Plan.  The Fisheries Service has the sole authority to amend and implement the Highly Migratory Species Fishery Management Plan in accordance with the requirements of the Magnuson-Stevens Act.  16 U.S.C. § 1854(g)(1).  In addition, the Fisheries Service has authority to promulgate regulations necessary to carry out any other provision of the Magnuson-Stevens Act.  16 U.S.C. § 1855(d).

53.     The Magnuson-Stevens Act requires the Fisheries Service to "establish a mechanism for specifying annual catch limits" for dusky sharks "at a level such that overfishing does not occur in the fishery, including measures to ensure accountability" if catch exceeds those limits.  16 U.S.C. §§ 1853(a)(15), 1854(g).

54.     The Magnuson-Stevens Act requires that the annual catch limits for a fishery constrain all sources of fishing mortality, including bycatch.  16 U.S.C. § 1853(a)(15); 50 C.F.R. § 600.310(f)(2)(i), (iv).  The Act defines "fishery" to include both a stock of fish such as the dusky shark and any fishing for that stock.  16 U.S.C. § 1802(13).

55.     Large numbers of dusky sharks are caught as bycatch in both commercial and recreational fisheries.  More than 80 percent of immature dusky sharks and more than 40 percent of adult dusky sharks caught as bycatch on bottom longlines die.  More than a third of dusky sharks caught as bycatch by pelagic longlines die.

56.     Under the Magnuson-Stevens Act, the Fisheries Service was required to establish annual catch limits and accountability measures for all fish stocks subject to overfishing by the year 2010.  *See* Pub. L. No. 109-479, §§ 104(a)(10), (b)(1)(A), 120 Stat. 3575, 3584 (Jan. 12, 2007), 16 U.S.C. § 1853 note.

57.     The Fisheries Service identified dusky sharks as overfished and subject to overfishing in 2006.

58.     The Fisheries Service was required to establish annual catch limits and accountability measures for dusky sharks in the Highly Migratory Species Fishery Management Plan by the year 2010.

59.     The Fisheries Service failed to meet these specific, non-discretionary requirements of the Magnuson-Stevens Act to establish annual catch limits and accountability measures for dusky sharks by 2010, as required.  *See* 5 U.S.C. § 706(1).

60.     The Fisheries Service has failed since 2010 to establish annual catch limits or accountability measures for dusky sharks in the Highly Migratory Species Fishery Management Plan or any other fishery management plan. The Fisheries Service's failure to act is unlawful, in violation of the Magnuson-Stevens Act and the APA, 5 U.S.C. §§ 701-706.

### COUNT II: THE FISHERIES SERVICE FAILED TO END OVERFISHING OF DUSKY SHARKS IN VIOLATION OF THE MAGNUSON-STEVENS ACT

61.     Oceana realleges and incorporates by reference paragraphs 1 through 50 of the Complaint in this Second Cause of Action.

62.     The Magnuson-Stevens Act requires the Fisheries Service to report annually to the Congress on the status of fish stocks and identify fish stocks that are overfished or subject to overfishing.  16 U.S.C. § 1854(e)(1); 50 C.F.R. § 600.310(j)(1).

63.     Within two years of identifying that a stock is overfished, the Fisheries Service must implement a fishery management plan, fishery management plan amendment, or regulations that will end overfishing "immediately."  16 U.S.C. § 1854(e)(3)(A).

64.     In 2006, the Fisheries Service determined that the dusky shark stock was overfished and subject to overfishing.

65.     Although the Fisheries Service implemented Amendment 2 to the Highly Migratory Fishery Management Plan in 2008, that plan amendment failed to end overfishing "immediately" or in the years following its implementation.

66.     In 2011, the Fisheries Service concluded, based on a stock assessment of the northwest Atlantic population, that dusky sharks were still subject to overfishing.  The Fisheries Service concluded that continued bycatch of dusky sharks was a major cause of continued overfishing.

67.     The Fisheries Service has not implemented any further measures to end overfishing since determining in 2011 that the dusky shark stock continued to experience overfishing.

68.     The Fisheries Service failed to meet the specific, nondiscretionary requirement of the Magnuson-Stevens Act to immediately end overfishing of dusky sharks once the stock was determined to be overfished.  *See* 5 U.S.C.§ 706(1); 16 U.S.C. § 1854(e)(3)(A).  Nine years have passed since the Fisheries Service first officially declared dusky sharks to be overfished and the Fisheries Service has not yet ended overfishing.

69.     The Fisheries Service's failure to act is unlawful, in violation of the Magnuson-Stevens Act and the APA, 5 U.S.C. §§ 701-706.

**COUNT III: THE FISHERIES SERVICE FAILED TO REVISE THE  DUSKY SHARK REBUILDING MANAGEMENT MEASURES IMMEDIATELY AFTER DETERMINING THE MEASURES WERE NOT MAKING ADEQUATE PROGRESS TO REBUILD THE DUSKY SHARK POPULATION IN VIOLATION OF THE MAGNUSON-STEVENS ACT**

70.     Oceana realleges and incorporates by reference paragraphs 1 through 50 of the Complaint in this Third Cause of Action.

71.     The Magnuson-Stevens Act requires the Fisheries Service to report annually to the Congress on the status of fish stocks and identify fish stocks that are overfished and subject to overfishing.  16 U.S.C. § 1854(e)(1); 50 C.F.R. § 600.310(j)(1).

72.     In 2006, the Fisheries Service determined that the dusky shark fish stock was overfished and subject to overfishing.

73.     Within two years of a stock being declared overfished, the Fisheries Service must implement a fishery management plan, fishery management plan amendment, or regulations to rebuild the stock.  16 U.S.C. § 1854(e)(3)(A).  These rebuilding measures must specify a time for rebuilding the stock that is "as short as possible" and may not exceed 10 years, unless, *inter alia*, the biology of the stock or other environmental conditions will not allow rebuilding within 10 years.  16 U.S.C. § 1854(e)(4)(A)(i), (ii).

74.     In 2008, the Fisheries Service amended the Highly Migratory Species Fishery Management Plan to implement management measures which did not directly limit dusky shark bycatch, but which the Fisheries Service concluded would nevertheless result in rebuilding the dusky shark population by 2108.

75.     The Magnuson-Stevens Act requires the Fisheries Service to review rebuilding measures at least every two years to determine whether they have resulted in adequate progress toward ending overfishing and rebuilding the stock.  16 U.S.C. § 1854(e)(7).

76.     In the case of Atlantic highly migratory species such as the dusky shark, if the Fisheries Service determines that adequate progress has not been made, the Fisheries Service must "immediately make revisions necessary to achieve adequate progress."  16 U.S.C. § 1854(e)(7)(A).

77.     In 2011, the Fisheries Service completed a stock assessment that concluded the dusky shark population was still overfished and subject to overfishing, and that the likelihood of rebuilding the population to a sustainable level, given the current levels of fishing mortality, was low.

78.     The Fisheries Service estimated it needed to cut the mortality of dusky sharks by more than half in order to have a 70 percent likelihood of rebuilding by the target date of 2108.

79.     Because the Fisheries Service determined that adequate progress was not being made to rebuild the dusky shark population in 2011, the Fisheries Service was required to make revisions to the fishery management plan "immediately" in order to achieve adequate progress. 16 U.S.C. § 1854(e)(7)(A).

80.     The Fisheries Service failed to meet the specific, non-discretionary requirement of the Magnuson-Stevens Act to make immediate revisions to its management measures when it became clear that existing measures were not making adequate progress toward rebuilding the dusky shark population.  *See* 5 U.S.C. § 706(1); 16 U.S.C. § 1854(e)(7)(A).

81.     Four years after determining that existing measures were not making adequate progress toward rebuilding the dusky shark population, the Fisheries Service still has not made revisions to the dusky shark rebuilding plan measures.

82.     The Fisheries Service's failure to act is unlawful, in violation of the Magnuson-Stevens Act and the APA, 5 U.S.C. §§ 701-706.

## PRAYER FOR RELIEF

WHEREFORE, Oceana respectfully requests this Court to enter the following relief:

1.      Declare that the Fisheries Service has violated the Magnuson-Stevens Act and the APA as described above by failing to meet the specific, non-discretionary requirements of the Magnuson-Stevens Act to: (1) set annual catch limits and accountability measures for dusky sharks by 2010;  (2) implement management measures within two years after identifying dusky sharks as overfished to end overfishing of dusky sharks immediately; and (3) revise its rebuilding plan measures for dusky sharks immediately after determining the existing measures were not making adequate progress towards rebuilding the stock.

2.      Order and enjoin the Fisheries Service to do the following within 90 days after this Court's order: (1) set annual catch limits and accountability measures for dusky sharks; (2) implement management measures to immediately end overfishing of dusky sharks; and (3) adopt additional or revised rebuilding measures necessary to achieve adequate progress toward rebuilding the stock.

3.      Maintain jurisdiction over this action until the Fisheries Service is in compliance with the Magnuson-Stevens Act, the APA, and every order of this Court;

4.      Award Oceana its reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

5.      Provide Oceana such additional and further relief as may be appropriate.

///

///

///

///

DATED:  October 27, 2015

Respectfully submitted,

STEPHEN E. ROADY
D.C. Bar. No. 926477
EARTHJUSTICE
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
202-667-4500 Telephone
202-667-2356 Fax
sroady@earthjustice.org

ANDREA A. TREECE
California Bar No. 237639
BRETTNY HARDY
Alaska Bar No. 1306043
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000 Telephone
415-217-2040 Fax
atreece@earthjustice.org
bhardy@earthjustice.org

*Counsel for Oceana, Inc.*